**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re Capital One Financial Corporation, Affiliate Marketing Litigation* | Case No. 1:25-cv-00023-AJT-WBP |

## MEMORANDUM IN SUPPORT OF CAPITAL ONE'S MOTION TO COMPEL DISCOVERY FROM FORMER PLAINTIFFS

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................... 2

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ............................................................................................................ 7

I.    The Former Plaintiffs Are Subject to Discovery Under Rule 45. ................... 8

II.   Capital One's Discovery Requests are Not Overly Burdensome. ............... 15

III.  Plaintiffs Had Prior Notice of the Subpoenas. .......................................... 19

CONCLUSION ....................................................................................................... 20

Capital One seeks targeted discovery from 21 individuals and entities (the "Former Plaintiffs") who voluntarily injected themselves into this litigation by filing multiple complaints against Capital One and participating to varying degrees in the early discovery process. Those Former Plaintiffs avoided party discovery by dismissing their claims without prejudice after they had been served with discovery. But that abrupt dismissal does not mean they are immune from third-party discovery under Rule 45. It also does not mean they lack relevant information.

On the contrary, the Former Plaintiffs' dismissals—and the potential reasons motivating those decisions, including their apparent realization that they *did not* suffer any injury caused by Capital One—demonstrate exactly why discovery should be permitted. Plaintiffs' counsel held these Former Plaintiffs out across multiple complaints as examples of a broad class of publishers who were uniformly injured by Capital One's allegedly fraudulent conduct. If the Former Plaintiffs have determined that is not true, their documents and information are critically relevant to Capital One's defenses, including to show that class certification is improper under Rule 23 because the proposed class is rife with publishers who were not injured and lack valid claims. It is particularly important because the Former Plaintiffs are smaller-volume publishers which, according to the operative Complaint, comprise approximately 80% of the putative class.

As set forth in Capital One's prior briefing, these are not typical "absent class members," and they should not be permitted to use their strategic dismissals and procedural gamesmanship to shield themselves from discovery of relevant information in their possession that cannot be obtained from the current Plaintiffs. Recognizing the burden analysis is different for non-parties The subpoenas served on the Former Plaintiffs are narrower than what Capital One has requested of the remaining plaintiffs. And despite the Former Plaintiffs' blanket refusal to produce *any* information, Capital One has repeatedly narrowed its requests, including both when it served the

1

subpoenas and in subsequent meet-and-confers.    That still has not been good enough for the Former Plaintiffs.

Capital One is entitled to discovery from the Former Plaintiffs because it is relevant to the *active* plaintiffs' claims and their request for class certification.  The Former Plaintiffs' blanket refusal to respond to Rule 45 discovery requests is unfounded on its face, in light of their continued litigation against other browser extensions, and in light of this Court's clear admonition that a "flat no" is rarely the right response in these circumstances.  Capital One therefore respectfully requests that this Court compel the Former Plaintiffs' compliance with Capital One's Rule 45 subpoenas as set forth below.[1]

## BACKGROUND

The background of this case is set forth more fully in Capital One's memorandum in support of its initial motion to compel.  ECF No. 172 at 3–6.  In short, Plaintiffs allege that the Capital One Shopping browser extension—which provides consumers with rewards, coupons, and price comparisons while shopping online—unlawfully takes commissions from other publishers who marketed products sold by third-party merchants.  But there is nothing unlawful about the way that Capital One Shopping operates.  Instead, this lawsuit is Plaintiffs' attempt to hold Capital One liable for Plaintiffs' dissatisfaction with the rules of the online marketing industry to which they agreed.

In January 2025, 27 plaintiffs began filing materially identical lawsuits against Capital One.  Around the same time, many of those plaintiffs filed similar lawsuits against other shopping

---

[1] This motion is directed at Capital One's request for documents in the form of a subpoena.  Capital One has expressly reserved its right to move to compel the Former Plaintiffs' testimony at depositions in the future, once Capital One has the opportunity to review the documents that are ultimately produced in response to its Rule 45 subpoenas.  *See* ECF No. 197.  The Parties have agreed that dispute should be taken up at a later date.  *Id*.

browser extensions in other courts, asserting substantially similar claims. *See, e.g.*, ECF Nos. 111-2, 143-1 (charts summarizing allegations against other browser extensions). In February 2025, the Former Plaintiffs filed a consolidated complaint alleging that Capital One Shopping "steals" commissions to which they are entitled. The Former Plaintiffs sought to represent a class comprised of "[a]ll persons in the United States who participated in an affiliate commission program with a United States online merchant and had commissions diverted to Capital One as a result of the Capital One Shopping browser extension." Consol. Compl. ¶ 245. Many of their former counsel also filed applications to be appointed lead counsel in this case.

Capital One moved to dismiss for lack of standing and failure to state a claim. Seemingly conceding the strength of Capital One's arguments, Plaintiffs responded with an amended complaint that named only 5 plaintiffs and abandoned 13 claims. *Compare* ECF No. 93 *with* ECF No. 121. The current Plaintiffs are 5 large online marketing businesses who compete with Capital One for merchants' advertising dollars. *See* Am. Compl. ¶¶ 112–50. Each of the current Plaintiffs alleges that it earns more than $100,000 in affiliate link marketing every year, which makes them different from the overwhelming majority of publishers: "[a]round 80% of creators earn $80,000 or less per year." *Id.* ¶¶ 33, 126. The vast majority of the Former Plaintiffs at issue in this Motion, which include more than 19 individual content creators and 2 other corporate marketing businesses, fall into the 80% of lower-earning creators that are not represented by the current Plaintiffs. Although the Former Plaintiffs were not named in the amended and operative consolidated complaint, they did not immediately dismiss their claims against Capital One.

On March 17, 2025, before the operative amended complaint was filed, Capital One exchanged proposed discovery requests with all 27 of the plaintiffs who had filed claims in this litigation as part of its discovery plan. ECF No. 93 at 12–14. On April 4, Capital One served its

initial discovery requests on all 27 of the original plaintiffs.  On April 11 and April 17, one day before all Plaintiffs' discovery responses were due, the Former Plaintiffs voluntarily dismissed their claims without prejudice under Rule 41(a)(1)(A)(i).[2]  Most of the Former Plaintiffs continue to maintain similar actions against other browser extensions.  *See* ECF No. 111-2.

Capital One's discovery requests on all Plaintiffs were intended to obtain information relevant to the merits of Plaintiffs' claims against Capital One and to develop evidence that class certification is not appropriate.  Once it became clear that the Former Plaintiffs would refuse to produce documents pursuant to Capital One's party discovery requests, Capital One promptly served Rule 45 subpoenas on each of the Former Plaintiffs between April 28, 2025 and May 1, 2025.  *See* ECF No. 172-8 (representative subpoena served on the Former Plaintiffs).

The subpoenas are more limited in scope and thus less burdensome than Capital One's original party discovery requests, because they do not include (among other things) any interrogatories. Capital One also substantially streamlined its document requests, including by narrowing the scope of communications requested to focus more specifically on commission payments, removing requests concerning specific allegations against Capital One, and removing requests concerning efforts to disable the Capital One Shopping browser extension.  At a high level, the RFPs in the subpoenas cover documents and communications regarding the Former Plaintiffs' (i) online marketing contracts and payments; (ii) awareness of industry practice governing attribution and stand-down rules; (iii) affiliate link transactions and corresponding revenue; (iv) discussions regarding Capital One Shopping or other browser extensions; and (v)

---

[2] Plaintiff Shonna Coleman has yet to formally dismiss her claims as of the filing of this Motion, though Capital One understands from Plaintiffs' counsel that this dismissal is forthcoming.  Capital One has not served a Rule 45 subpoena on Ms. Coleman and does not intend to do so based on representations by Plaintiffs' Lead Counsel about her uniquely burdensome circumstances.

documents received in similar lawsuits in which the Former Plaintiffs are participating.  *See* ECF No. 172-8.  That information is highly relevant to this litigation *regardless* whether the Former Plaintiffs have active claims, including because it has the potential to impeach evidence produced by Plaintiffs' cherry-picked group of putative class representatives, and because it may demonstrate that basic facts on the ground relating to issues like reliance, materiality, interference, and injury differ with respect to each publisher such that class certification would be inappropriate.

At the May 9 hearing on the parties' respective initial discovery motions, Plaintiffs maintained their erroneous argument that the Former Plaintiffs should not have to produce *any* discovery in this matter because they are mere "absent class members."  In ruling that the Former Plaintiffs are not subject to *party* discovery under Federal Rule of Civil Procedure 34—a point that Capital One conceded during the hearing and in its papers—the Court stated that a blanket refusal by the Former Plaintiffs to provide any discovery in response to Capital One's Rule 45 subpoenas would be unwise, cautioning that a "flat no" to properly-propounded discovery is typically a bad answer.

The Former Plaintiffs have failed to take that guidance to heart.  *First*, on May 12, the Former Plaintiffs served a combined, blanket objection to Capital One's Rule 45 requests, again asserting that they are not subject to any discovery in this matter as mere "absent class members" and refusing to produce a single document.  Ex. 1 at 1, 3–13.  The Former Plaintiffs' combined objections include no particularized or individual burden objections—the objections were entirely general and vague.

*Second*, on May 15, when Capital One met and conferred with the Former Plaintiffs (through Lead Counsel, who also represents some of the Former Plaintiffs) to discuss potential ways to narrow the dispute, the Former Plaintiffs did not make *any* concrete proposal on what they

would be willing to produce beyond preparing a list of affiliate networks and affiliate IDs that they hoped would show, consistent with Capital One's defenses in this case, that some or all of the Former Plaintiffs were not injured by the Capital One Shopping browser extension.  Instead, they insisted that Capital One negotiate against itself by narrowing its requests to what it "really wanted," at which point they would consider discussing a potential agreement.  That, of course, is not how discovery works—the narrowed subpoena reflects what Capital One "really wanted" from individuals and entities that filed suit against Capital One, and the Former Plaintiffs had an obligation, just like any other subpoena recipient, to squarely answer what if anything they would agree to produce.  Notwithstanding that, Capital One did make a substantial narrowing proposal, including by agreeing to forego (for the time being) transaction-level data and other detailed revenue data and communications that the Former Plaintiffs flagged as a potential burden concern. The Former Plaintiffs *still* did not, and have not, agreed to produce *any* actual documents in response to the subpoenas, instead maintaining their blanket objection and continuing to push Capital One to further negotiate against itself.

The end result is that Capital One's subpoenas are far narrower than what the Former Plaintiffs would have been required to produce if they had maintained their named plaintiff status, particularly in light of the current Plaintiffs' production agreements and the Court's ruling on Capital One's motion to compel regarding the current Plaintiffs, ECF No. 194.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 "expressly permits a party to issue discovery subpoenas to a nonparty for documents and things in the nonparty's possession, custody, or control." *Marshall v. Georgetown Mem'l Hosp.*, 2025 WL 411661, at *2 (D.S.C. Feb. 6, 2025); Fed. R. Civ. P. 45(a)(1)(iii).  The scope of discovery pursuant to a Rule 45 subpoena is equivalent to the scope

of discovery requests upon parties under Rule 26.  *Marshall*, 2025 WL 411661, at *2 (citations omitted).  Pursuant to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The burden of proving that a subpoena is unduly burdensome falls on the person asserting the burden, and the Court may "nonetheless order discovery from such sources if the requesting party shows good cause."  Fed. R. Civ. P. 45(e)(1)(D).

## ARGUMENT

The Former Plaintiffs raise three related and flawed arguments in their objections to Capital One's subpoenas to purportedly support their refusal to provide responsive documents.

*First*, the Former Plaintiffs contend that they are "absent class members" and therefore completely protected from discovery, including under Rule 45.  As Capital One explained in prior briefing, that is incorrect.  The Former Plaintiffs filed complaints (and participated in the discovery process), thereby injecting themselves into this case and subjecting themselves to discovery under well-established principles.  Even if the Former Plaintiffs were typical "absent class members," courts routinely order discovery of a reasonable set of absent class members in cases like this one, where the entities have information relevant to class certification that cannot be obtained from the cherry-picked representatives.

*Second*, the Former Plaintiffs contend that Capital One's discovery requests are overly burdensome, including because they seek electronically stored information ("ESI") such as communications.  This argument is also unfounded.  Capital One's discovery requests are appropriately and narrowly tailored and are not per se overly burdensome because they seek communications.  Indeed, such communications may contain critically important information, such as whether the Former Plaintiffs share the current Plaintiffs' alleged understanding of "last-

click attribution" or have ever complained about being deprived of commissions. Capital One is more than willing to work with the Former Plaintiffs on specific burden and ESI concerns, including by negotiating tailored search terms, but the Former Plaintiffs apparently have to be ordered to participate in the process in order for meaningful discussions to occur.

*Third*, the Former Plaintiffs contend that Capital One's subpoenas are void because the current Plaintiffs did not receive "prior notice" of the subpoenas. This argument is belied by the facts and in any event is not a basis for striking Capital One's discovery requests on this record, where it is clear the Former Plaintiffs were on notice of the requests and no prejudice resulted.

## I.      The Former Plaintiffs Are Subject to Discovery Under Rule 45.

Plaintiffs strategically dropped the Former Plaintiffs from the Amended Complaint after Lead Counsel had the opportunity to "vet" them. The Former Plaintiffs argue that they should not be subject to *any* discovery in this case because they are mere "absent class members." Ex. 1 at 1. In truth, the Former Plaintiffs have been steeped in this litigation (and similar cases), filed claims against Capital One and participated in early discovery, sought to have their counsel appointed Lead Counsel, and constitute a unique source of discovery regarding the merits and whether class certification is appropriate given Plaintiffs' decision to drop them after "vetting." They voluntarily injected themselves into this litigation, and Capital One is entitled to discovery showing that there are dissimilarities in the putative class, including by assessing the dissimilarities that caused Plaintiffs to drop 80% of the named parties (representing 80% of the putative class of publishers) from their complaint. Denying this motion would allow Plaintiffs to strategically block discovery likely to show certification-defeating dissimilarities within the putative class, and would rest any ensuing class certification decision on an unreliable foundation.

When Capital One served its original discovery requests, all of the Former Plaintiffs were active parties to the suit. The timing and nature of most of those dismissals—the day before Plaintiffs' discovery objections were due—reflects a transparent effort to dodge discovery. The Former Plaintiffs now claim that no discovery of them should be permitted because they are nothing more than absent class members. Ex. 1 at 1. But the Former Plaintiffs are not simply "absent class members," and courts consistently find that named plaintiffs in a putative class action who voluntarily dismiss their claims may be subject to discovery like Capital One's requests here.

Named plaintiffs in a putative class action who, after filing suit, decide to voluntarily dismiss their claims, have "affirmatively interjected themselves" into the litigation and therefore "are not ordinary absent class members" and are not "entitled to a shield from discovery." *Burnett v. Ford Motor Co.*, 2015 WL 3540886, at *3 (S.D.W. Va. June 4, 2015); *see also Gov't Emps. Health Ass'n v. Actelion Pharma Ltd.*, 2022 WL 16553225, at *2 (D. Md. Oct. 31, 2022) (referring to *Burnett* as "the only guidance on this issue in the Fourth Circuit"). In *Burnett*, the court granted the defendant's request to depose individuals who were originally named plaintiffs in the case but who had dismissed their claims after the plaintiffs served discovery requests and requested deposition dates. *Burnett*, 2015 WL 3540886, at *3. As other courts have since observed, the *Burnett* court reasoned that the concerns typically present when discovery is sought from absent class members are "not as acute in situations where the absent class members ha[ve] previously been named plaintiffs." *Gov't Emps. Health Ass'n*, 2022 WL 16553225, at *3 (discussing *Burnett*). In such situations, the court "lowers the threshold" for showing that discovery should be permitted. *Id.* (granting in part the defendant's motion to compel discovery from a former plaintiff).

The Former Plaintiffs may argue that were not substantively involved in this case outside the filing of the complaint. But nothing more than filing a complaint is required for a plaintiff to inject themselves into litigation and subject themselves to discovery, even after dismissing their claims. *See, e.g.*, *Burnett*, 2015 WL 3540886, at *2 (dismissed plaintiffs "should have realized that they would be expected to respond to discovery requests" when they filed their complaints); *Fishon*, 336 F.R.D. 67 at 71–72 (S.D.N.Y. 2020) (dismissed plaintiffs ceased being "true strangers to the litigation," i.e. true "absent class members," when they filed their complaints). Even if more were required, the Former Plaintiffs did much more. Among other things:

- Prior to the filing of the Amended Complaint, the Former Plaintiffs filed two complaints against Capital One and participated in proposing extensive document requests, interrogatories, and deposition topics on Capital One as part of the Plaintiffs' proposed discovery plan.[3]

- Former Plaintiffs Jesika Brodiski and Peter Hayward served their own separate document requests, proposed their own protective order and ESI protocol, sent 32 preservation letters to affiliate networks and merchants, and retained an expert familiar with browser extension technology. See ECF No. 64-1 at 3.

- Former Plaintiffs Cameron King, Jose Moran, and Xavier Smith, through Plaintiffs' Lead Counsel and Local Counsel, participated in negotiations over the litigation schedule, the proposed protective order, and Capital One's structured data. *See, e.g.*,

---

[3] *See* ECF No. 1 (Former Plaintiff Complaint); ECF No. 93 (Consolidated Former Plaintiff Complaint); ECF No. 94 (Pretrial Order #1) at 13 (requiring that Former Plaintiffs have opportunity to review and provide input on discovery plan prior to service on Capital One); ECF No. 190-8 (Plaintiffs' Proposed Discovery Plan).

ECF No. 123 (Joint Statement on Proposed Litigation Schedule and Discovery Plan) (reflecting discussions prior to filing of Amended Complaint).

- Virtually all of the Former Plaintiffs sought to have their counsel appointed to a leadership role in this case. See ECF Nos. 50–58, 62–72.

Given these Former Plaintiffs' voluntary involvement, and just as in *Burnett* and *Government Employees*, the Former Plaintiffs are subject to discovery for at least four reasons.

*First*, Capital One's requested discovery is not "designed to take advantage of class members or reduce the size of the class." *Burnett*, 2015 WL 3540886, at *2. Capital One "does not attempt to discover this information from a large number of absent class members and does not tie a failure to respond to the discovery to any particular sanction." *Id.* To the contrary, Capital One seeks discovery from a fraction of the "thousands" (*see* Am. Compl. ¶ 158) of putative class members and that discovery is "confined to important issues." *Gov't Emps. Health Ass'n*, 2022 WL 16553225, at *3. When the Former Plaintiffs "agreed to participate in the case in a representative capacity," they "should have realized that they would be expected to respond to discovery requests at some point in the proceedings." *Burnett*, 2015 WL 3540886, at *2. Indeed, the timing of the vast majority of the Former Plaintiffs' dismissals—the day before the agreed deadline for the parties to serve discovery objections—suggests the Former Plaintiffs dismissed their claims specifically in an attempt to shield themselves from that very discovery. Subsequent representations from Plaintiffs' counsel, including that the majority of the Former Plaintiffs would be willing to dismiss their claims *with* prejudice because they realized that they were not actually injured by the Capital One Shopping Extension, reinforces that point even further.

*Second*, discovery from the Former Plaintiffs is necessary because "the information sought is relevant to common issues and cannot be obtained from other class representatives." *Id.* The

11

requested information is directly relevant to whether a class should be certified. As a result of the dismissals, the current Plaintiffs are outliers in the class that they seek to represent. Plaintiffs are corporations that allege they earn more than $100,000 in affiliate link marketing annually. Am. Compl. ¶¶ 113, 126, 130, 137, 146. But Plaintiffs acknowledge that others in the class they seek to represent are not like themselves: they admit that "[a]round 80% of creators earn $80,000 or less per year from affiliate marketing." Am. Compl. ¶ 33.[4] Moreover, Lead Counsel conceded in the May 15 meet-and-confer that a number of the Former Plaintiffs would not meet the statistical analysis in the Amended Complaint that purportedly speaks to Plaintiffs' injury, *see, e.g.*, Am. Compl. ¶ 111, thus admitting that a number of the Former Plaintiffs—and correspondingly, a significant portion of Plaintiffs' putative class—are uninjured.

Plaintiffs appear to prefer that analysis of the merits and class certification issues in this case focus exclusively on the experiences of the cherry-picked, high-earning, corporate Plaintiffs, which constitute only about 20% of "creators." But the class definition is much broader: "All persons in the United States who participated in an affiliate commission program with a United States online merchant and had commissions diverted to Capital One as a result of the Capital One Shopping browser extension." Am. Compl. ¶ 155. Capital One is entitled to discovery regarding the experiences of the low-earning, individual Former Plaintiffs. *See Burnett*, 2015 WL 3540886, at *2 (discovery from dismissed plaintiffs needed to assess "commonality" between class members with "different" experiences); *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 74 (S.D.N.Y. 2020) (defendant had "the right" to discovery from dismissed plaintiffs because "it would be

---

[4] *See also* Consol. Compl. ¶¶ 116, 122, 133, 148, 165, 176, 181, 186, 192, 197, 216, 221 (relatively low-earning individual publishers).

helpful to the Court at the class certification stage to hear testimony from those class-eligible individuals who have had relevant experiences that Named Plaintiffs have not had").

Capital One's discovery requests therefore seek information about the composition and experiences of the putative class "not available from the current class representatives" and "not entirely within [Capital One's] knowledge," but which is nonetheless necessary for Capital One to assess whether a class should be certified. *Burnett*, 2015 WL 3540886, at *2. For example, the requested discovery will reveal the extent to which class members can be ascertained and whether (as Capital One expects to be the case) individualized inquiries will be necessary to show the "injury, if any," suffered by putative class members. *Id.* It also seeks information about the Former Plaintiffs' social media profiles and affiliate IDs, which Capital One can use to obtain information from third-party affiliate networks about the circumstances (if any) when a consumer clicked on both one of the Former Plaintiffs' affiliate links and an offer provided by the Capital One Shopping browser extension. It can further show the extent to which the Former Plaintiffs' experiences with affiliate marketing differ from the experiences of the current, corporate entities who are seeking to represent them, including in their contractual terms with other industry participants and in how consumers interact with their affiliate links and the resulting operation (if any) of the Capital One Shopping browser extension. Their information will also reveal the extent to which they—and the other industry players they interact with—share the current Plaintiffs' view about how attribution models and the online advertising industry allegedly work.

*Third*, the discovery sought will not impose any additional burdens on the vast majority of Former Plaintiffs, who remain in active litigation as putative class members against other browser extensions. *See Burnett*, 2015 WL 3540886, at *1 ("Courts always have leeway to permit discovery from absent class members" where, as here, it is "reasonably necessary, not conducted

13

for an improper purpose, and not unduly burdensome in the context of the case and its issues."). Nearly all of the Former Plaintiffs are currently litigating similar claims against other browser extensions, meaning it is very likely they will need to provide the same or similar discovery sought by Capital One regardless. *See* ECF No. 111-2 (chart summarizing Former Plaintiffs' allegations against different browser extensions).

*Fourth*, all of the Former Plaintiffs are represented by counsel, minimizing the need that responding to Capital One's discovery requests will require separate "expert or legal assistance." *Id.* at *3. Indeed, the case for resisting discovery is especially weak as to the claims of two Former Plaintiffs—Cameron King and Jose Moran—who were represented by Plaintiffs' Lead Counsel. And all of the Former Plaintiffs who have dismissed their claims have reserved their right to participate in any recovery that may be obtained in this case, *see* ECF Nos. 138, 146–54, so it is only fair that Capital One has the right to pursue discovery from them. That "former counsel will already be present" for discovery matters in this case thus further supports that they remain subject to discovery now. *Id.*

*    *    *

For these reasons, this Court should require the Former Plaintiffs to comply with Capital One's subpoenas. *See also In re Drassinower*, 2021 WL 3772328, at *4–6 (S.D. Cal. Aug. 25, 2021) (former plaintiff "inserted herself in the litigation" and therefore was subject to discovery, including a deposition); *id.* at *4–6 (collecting cases holding the same); *Fishon*, 336 F.R.D. at 72–74 (former plaintiffs subject to discovery because they were not "true strangers to the litigation" and had asserted a claim "based on the same allegations" as the current plaintiffs). Even if the Court credits the Former Plaintiffs' assertion that they are mere "absent class members," discovery is still warranted here. Courts routinely order discovery of a reasonable set of truly absent class

14

members when those entities have information that is relevant to class certification issues. *See, e.g.*, 3 Newberg on Class Actions § 9:17 (while discovery requests "aimed at all absent class members" are commonly rejected, courts often require "some subset of absent class members" to "be selected for involvement in discovery"); Manual for Complex Litigation, Fourth, § 21.14 (2004) ("during the precertification period," courts should "limit[] discovery to a certain number or a sample of proposed class members"); *Burnett*, 2015 WL 3540886, at *1 (courts "always have leeway to permit discovery from absent class members" where it is "reasonably necessary, not conducted for an improper purpose, and not unduly burdensome in the context of the case and its issues"). That is the case here.

## II.    Capital One's Discovery Requests are Not Overly Burdensome.

From the outset, Capital One's discovery requests to the Former Plaintiffs have been relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Even so, Capital One narrowed the discovery it seeks from the Former Plaintiffs through the Rule 45 subpoenas after they filed their dismissals, including by narrowing the scope of communications requested to focus more specifically on commission payments, removing requests concerning specific allegations against Capital One, and removing requests concerning efforts to disable the Capital One Shopping browser extension. Notwithstanding this, the Former Plaintiffs assert in their objections that each of Capital One's RFPs is unduly burdensome—without offering *any* specific or individualized burden objection. Ex. 1 at 2–13. This vague, generalized, unreasoned objection is unfounded and provides no basis for this Court to completely quash Capital One's discovery requests for each of the 21 Former Plaintiffs.[5]

---

[5] In some instances, the Former Plaintiffs appear to have copied and pasted from *Plaintiffs'* objections to Capital One's discovery requests without accounting for Capital One's narrowing efforts. For example, Capital One's RFP 2 to the Former Plaintiffs is similar to, but notably (continued…)

This is true particularly in light of Capital One's further narrowing of its requests since serving the subpoenas. Capital One originally served 12 RFPs on each Former Plaintiff. *See* Ex. 1.[6] In an attempt to reach a fulsome agreement, during the May 15 meet-and-confer, Capital One proactively offered to seek documents and data regarding transaction-level data (RFPs 6, 7, and 8) from third-party affiliate networks in the first instance, and only asked that the Former Plaintiffs produce responsive information in their *current possession*, to the extent that exists.[7] Capital One also limited the revenue documents it seeks pursuant to RFP 7 to documents "sufficient to show" Former Plaintiffs' affiliate marketing revenue, and offered to drop RFP 2 entirely. Even taking this offer into account, as of this filing, the Former Plaintiffs have still failed to make *any* concrete proposal on what they would be willing to produce.

Instead, the Former Plaintiffs informed Capital One that many of the Former Plaintiffs believed they were *not* injured by the Capital One Shopping browser extension—thus contradicting the allegations in their original complaints—and that Capital One should drop its Rule 45 subpoenas entirely if those individuals and entities dismissed their claims with prejudice. But dismissal with prejudice does not resolve Capital One's interest in this discovery. Publishers who admit they were not injured have no claims—it does not matter whether their dismissals are

---

narrower than, Capital One's RFP 2 to Plaintiffs, and is limited to communications "referencing any payment you received (or believe you should have received) relating to Your Online Marketing." Former Plaintiffs' copied-and-pasted objection that this request "sweeps in" communications about "campaign scheduling," "administrative account issues," and how consumers "liked" their content, is therefore factually incorrect.

[6] Capital One's subpoenas to the four Former Plaintiffs who are not pursing similar litigation against other browser extensions are limited to 11 RFPs. *See* Ex 1 at 13 n.1.

[7] Capital One expressly reserved the right to come back to Former Plaintiffs regarding RFPs 6, 7, and 8 if necessary, for example if the affiliate networks are unable to produce responsive information on a timeline suitable for this case. For more specific reference, RFPs 6, 7, and 8 seek documents identifying Former Plaintiffs' affiliate links and affiliate IDs, revenue data, and data regarding clicks on Former Plaintiffs' affiliate links.

with prejudice or not.  What matters is what their individual discovery shows about the flaws in the current Plaintiffs' case theory, including with respect to why class treatment is inappropriate under Rule 23.  If anything, the Former Plaintiffs' admission that they were not injured makes them *more important* discovery targets for Capital One.

Ultimately, Capital One's subpoenas are far narrower than what the Former Plaintiffs would have been required to produce if they had maintained active claims, based on the current Plaintiffs' production agreements and the Court's ruling on Capital One's motion to compel regarding current Plaintiffs, ECF 194.  Presently, Capital One seeks only the following from the Former Plaintiffs:

- Contracts with advertisers, affiliate networks, and other publishers (RFP 1).

- Documents and communications reflecting the Former Plaintiffs' awareness of industry practice governing attribution and standdown rules (RFPs 3 and 4).

- Documents identifying the social media channels, other websites, or platforms and the individuals and entities involved in the Former Plaintiffs' marketing (RFPs 5 and 11).

- Information sufficient to show the Former Plaintiffs' affiliate IDs, corresponding with each of the affiliate networks with which Former Plaintiffs have partnered (RFP 6).

- Documents in the Former Plaintiffs' *current possession* regarding online marketing transactions and revenue (RFPs 6, 7, and 8).

- Documents and communications relating to Capital One Shopping or other browser extensions (RFPs 9 and 10).

- Documents that Former Plaintiffs, if they have sued another browser extension, have received from any defendant in that litigation relating to Former Plaintiffs' loss of revenue (RFP 12).

These requests are narrowly tailored, plainly relevant to the merits of the case and class certification issues, and not unduly burdensome.

In a failed attempt to paint an undue burden argument, the Former Plaintiffs spend a full page of their objections citing to a spackling of case law from around the country for the proposition that the requesting party should seek discovery first from parties to the suit.  *See* Ex. 1 at 2 (collecting cases).  But, as discussed above, Capital One cannot reasonably seek this remaining information from the current Plaintiffs (because they plainly do not have it), nor is it in Capital One's possession, custody, or control.  And the current Plaintiffs are differently situated than the Former Plaintiffs, even though both are members of the same putative class.

To the extent the Former Plaintiffs articulated any specific burden objection, it was a blanket objection to producing ESI, raised during the May 15 meet-and-confer.  But the fact that Rule 45 discovery requests might implicate ESI does not categorically render them improper. While "searching for and producing" documents or ESI "certainly will impose some burden on and expense" on a non-party, "that is the natural and expected consequence of being properly served with a Rule 45 document subpoena as an entity that clearly has relevant information for a lawsuit to which it is not a party."  *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 455-56 (N.D. Tex. Apr. 13, 2015); *see also Marchionda v. Embassy Suites Franchise, LLC*, 2018 WL 8458792, at *6 (S.D. Iowa July 10, 2018) (granting "production of electronically stored communications and information related to the incident underlying her claims" in the possession of third parties where "movants have not sufficiently explained, or shown a valid basis, for failing to produce any relevant materials").  Indeed, courts have held that searching email correspondence is not an undue burden even where the non-party would have to "open each individual electronic document to determine whether that correspondence" is responsive.  *Marshall*, 2025 WL 411661,

at *3–4 (denying motion to quash subpoena seeking correspondence spanning more than 15 years that was stored in email and/or in hard copies that needed to be scanned). Accordingly, ESI is regularly produced by non-parties to litigation. *See, e.g.*, *CSX Transportation, Inc. v. Norfolk Southern Railway Company*, 2020 WL 12862961, at *1 (E.D. Va. Feb 10, 2020).

The Former Plaintiffs cannot meet their burden to show that producing the requested ESI is unduly burdensome. *See* Fed. R. Civ. P. 45(e)(1)(D). And even if the Court were to find that producing the requested ESI is unduly burdensome—it should not—Capital One has shown good cause for its production and the Court should nonetheless order its production. *Id.*

### III. Plaintiffs Had Prior Notice of the Subpoenas.

Finally, the Former Plaintiffs wrongly assert in their objections that Capital One's document subpoenas are void "for failing to show that prior notice has been provided to other parties to the litigation, as required by Federal Rule of Civil Procedure 45(a)(4)." Ex. 1 at 1. To the extent the Former Plaintiffs intend to rely on that technical argument, it should be soundly rejected. The current Plaintiffs have long been on notice of precisely what information Capital One seeks from the Former Plaintiffs, including because Lead Counsel represents some of the Former Plaintiffs. Capital One served discovery requests on the Former Plaintiffs while they were parties to the case. Capital One then advised Lead Counsel that it would issue Rule 45 subpoenas to the Former Plaintiffs based on those discovery requests, and attached one such subpoena to its April 25 Motion to Compel. *See* ECF No. 172-8. Capital One then served the subpoenas between April 28 and May 1, and provided notice of the same to Plaintiffs by May 1. The current Plaintiffs separately received contemporaneous service of the subpoenas to Former Plaintiffs Cameron King, Jose Moran, and Xavier Smith, who are represented by Plaintiffs' Lead Counsel and Local Counsel. Capital One therefore provided ample notice to the current Plaintiffs, and there can be no serious allegation of surprise or improper conduct.

Even if there was some very minor technical deficiency, "delayed service alone . . . is not a basis to quash a subpoena," as the "objecting party must also demonstrate prejudice." *Vannoy v. Federal Reserve Bank of Richmond*, 2014 WL 2601765, at *4 (E.D. Va. June 10, 2014) (quoting *Mayor & City Council of Baltimore v. Unisys Corp.*, 2013 WL 6147780, at *3 (D. Md. Nov. 21, 2013)). The Former Plaintiffs cannot meet that burden here, and it is telling that the current Plaintiffs are completely silent on this issue notwithstanding ample time to object. *Id.* at *4 (finding no prejudice and denying motion to quash where party received notice of subpoena after it had been served); *see also* Fed. R. Civ. P. 45 Advisory Committee Notes to 1991 Amendment (purpose of the notice requirement "is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things"); *Mayor & City Council of Baltimore*, 2013 WL 6147780, at *3 (no prejudice where party did not receive notice until three months after service of subpoena on third party where party had opportunity to object to production).

## CONCLUSION

For these reasons, this Court should order that the Former Plaintiffs in the Consolidated Class Action Complaint (ECF No. 93) are properly subject to discovery in this case and shall provide responsive information in response to Capital One's Rule 45 subpoenas, subject to the narrowing limitations described herein.

DATED: May 23, 2025

Respectfully submitted,

By:  */s/ Connor Kelley*

Connor Kelley (VA Bar No. 93596)
Valerie Hletko*
Andrew Soukup*
Stephen Petkis*
Jeffrey Huberman*
Amee Frodle*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5606
Email:  ckelley@cov.com
          vhletko@cov.com
          asoukup@cov.com
          jhuberman@cov.com
          afrodle@cov.com
          spetkis@cov.com

*Attorneys for Capital One*

*\*Admitted pro hac vice*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Capital One has in good faith conferred with counsel for the Former Plaintiffs (through Plaintiffs' Lead Counsel) in an effort to resolve the discovery matters at issue herein.


By:  /s/ *Connor Kelley*
     Connor Kelley

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of May, 2025, I sent by email the foregoing to all counsel of record.


By:  */s/ Connor Kelley*
Connor Kelley