IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| *In re Capital One Financial Corporation, Affiliate Marketing Litigation* | Case No. 1:25-cv-00023-AJT-WBP |

**JOINT STATUS REPORT PURSUANT TO PARAGRAPH 5 OF PRETRIAL ORDER #1**

Pursuant to Paragraph 5(a) of the Court's Pretrial Order #1, ECF No. 94, Lead Plaintiffs' Counsel and Defense Counsel ("the Parties") submit this joint status report and proposed agenda in advance of the July 1, 2025 status conference.

**I.     Agenda**

The Parties propose the following agenda for the July 1, 2025 status conference:

- Status of the case;

- Plaintiffs' Motion to Modify the Scheduling Order, ECF No. 233, *see infra* Section II; and

- Fact discovery, including updates on structured data, source code review, third-party subpoenas, and depositions, *see infra* Section III.

**II.    Plaintiffs' Motion to Modify the Scheduling Order**

On June 20, 2025, Plaintiffs moved to modify the scheduling order by moving back the current deadlines by 60 days, including moving the deadlines for Plaintiffs to file their Motion for Class Certification and to serve their Expert Disclosures from July 2, 2025 to September 1, 2025. ECF No. 233 at 1–2. Capital One intends to oppose that motion and believes Plaintiffs' class

1

certification motion (including any expert reports Plaintiffs intend to submit in connection with that motion) should be due by July 23.

**Plaintiffs' Position**

As explained in the memorandum in support of the Motion, Plaintiffs contend that there is good cause for such a modification because: 1) Plaintiffs need additional time to analyze the voluminous structured data set produced by Capital One, which they only received access to in full on June 10, 2025; 2) Plaintiffs need additional time to obtain information crucial to that structured data analysis from third parties; and 3) Plaintiffs need additional time to complete their source code review, with the most recent review taking place only yesterday, on June 26, 2025. During such review, it became apparent that Capital One's method of producing source code has made large portions of relevant code inaccessible to Plaintiffs' experts. *See generally* ECF No. 234. Plaintiffs are requesting to meet and confer with Capital One about its source code production and may need to file a motion to compel and/or to modify the protective order regarding the source code in order to require Capital One to make available the entirety of the relevant portions of the source code for the entire class period.

Pursuant to the Court's June 23, 2025 order, ECF No. 236, Defendants' Opposition to the Motion is due on June 30, 2025, and Plaintiffs' Reply in Support is due on July 3, 2025. Plaintiffs intend to file an additional declaration with their Reply to provide additional factual background on the state of the discovery issues as of July 3, 2025. The deadlines for class certification and Plaintiffs' expert disclosures are continued until a date to be determined by the Court following its ruling on Plaintiffs' Motion.

**Defendants' Position**

As will be explained in Capital One's forthcoming opposition to Plaintiffs' Motion to modify the schedule, Plaintiffs have not shown good cause to modify the class certification deadline, and at most Plaintiffs should be afforded three extra weeks (until July 23). Capital One has satisfied its discovery obligations in this case and has provided Plaintiffs with the discovery they need to move for class certification under the schedule set and reaffirmed by this Court at the most recent status hearing on June 3. To the extent that Plaintiffs say they do not have or have not yet reviewed crucial discovery, that is a result of their own lack of diligence, and Plaintiffs' Motion does not adequately explain how the information they say they need affects their ability to pursue class certification. And their assertion regarding source code, raised for their first time just hours before this report is due, is wholly meritless. In any event, as explained more fully below, for each category of information that Plaintiffs use as a pretext for delay, Plaintiffs' own decisions are solely responsible for their professed inability to meet this Court's deadline.

### III. Fact Discovery

The Parties exchanged discovery requests on April 4, 2025, and written objections on April 18, 2025. On May 5, 2025, the Parties exchanged written responses to Requests for Production and Interrogatories. Judge Porter ruled on the Parties' motions to compel following the May 9, 2025 hearing. ECF No. 194. Neither party objected to those rulings.

**Plaintiffs' Position**

The Parties produced substantial numbers of documents, including 70,796 from Plaintiffs and 20,619 from Defendants. Plaintiffs, five small businesses without the corporate resources of Defendants, are nearly done gathering their own documents from dozens of different sources with the assistance of document collection vendors and expect to be substantially complete with their

3

production by July 11th. The Parties successfully resolved their issues regarding initial search terms to use on each party's ESI, while reserving their rights to iterate on the agreed upon search terms later in discovery. Plaintiffs also took two depositions on June 26th and 27th, including a 30(b)(6) deposition of Capital One's Senior Vice President and Co-Head of Capital One Shopping.

As described in Plaintiff's Motion to Modify the Scheduling Order, however, several crucial discovery issues remain, including structured data, source code, and third-party discovery. Additionally, the Parties have yet to schedule additional depositions that will be required for class certification, including Defendants' remaining 30(b)(6) representatives, Defendants' custodial witnesses, and the named Plaintiffs.

A.  **Structured Data**

Since Plaintiffs filed their Motion to Modify the Scheduling Order, the Parties have continued to confer regarding the information Plaintiffs need to perform the necessary analysis of the structured data. Defendants did not produce additional descriptions of columns within the structured data until June 26, which were required to allow Plaintiffs to continue their analysis of the data alongside their retained experts. Defendants are still assessing whether they can produce structured data from the test transactions referenced in Plaintiffs' complaint, which will also be necessary for Plaintiffs' analysis.

The Parties will only be able to schedule the 30(b)(6) deposition for the Topics related to structured data after resolving these issues. Defendants' characterization of Plaintiffs' request to reschedule this deposition and suggestion that an "appropriately sophisticated expert" could have completed an analysis of the structured data is wrong. By way of example,[1] Plaintiffs had asked

---

[1] Because the structured data and source code have been marked confidential and this Status Report is being filed publicly, Plaintiffs will not include specific examples here but will be prepared to discuss such examples during the July 1 conference with the Court.

for descriptions of two columns referencing commissions, which go to the heart of this case, that had no clear differentiation between each column, despite the fact that the columns often contained different dollar figures. Defendants did not provide that description until one day after that 30(b)(6) deposition was scheduled. Taking one of the most important depositions in this case without such a basic understanding of the key data set would have been malpractice.

Moreover, Defendants' descriptions are all provided only at the field level. Defendants have refused to provide information indicating what the various *values* in those fields represent. While for some fields, the meaning is clear, i.e. it is a dollar value, for other fields, there are dozens of non-self-explanatory values. As it stands, Plaintiffs can only guess at what those data points represent. Moreover, Plaintiffs should not be forced to rely on cryptic field descriptions provided to conduct their data analysis. Ultimately, Defendants' source code determines what data is recorded, when it is recorded, and what events trigger it being recorded. Plaintiffs should have the opportunity to review that source code, *see infra*, and not be forced into an endless game of cat and mouse waiting for sufficient descriptions. Once Defendants provide adequate descriptions of the columns in the structured data and the fields, and make available the requested source code, Plaintiffs will schedule this 30(b)(6) deposition promptly.

**B.     Source Code Review**

Plaintiffs' expert reviewed additional, earlier versions of Defendants' source code on June 26, 2025. Rather than providing fulsome versions of prior and subsequent source code so Plaintiffs could determine what changes had been made and when, , Defendants instead provided only delta files, i.e. files showing changes made during the class period. As defendants know, however showing only *changes without providing the baseline at the starting point of the changes,* is largely useless. It is the functional equivalent of telling someone that the letter "S" was added to the end

of a word without telling them what the word was in the first place. Plaintiffs are requesting to meet and confer further on this issue but believe Defendants are largely weaponizing the protective order and using it to shield their full code from review. Plaintiffs may be required to move to compel and/or amend the protective order. If necessary, Plaintiffs will provide additional details in that potentially forthcoming motion, but Plaintiffs require this review for purposes of both their class certification motion and their expert disclosures. Moreover, the 30(b)(6) deposition on the Topics related to source code and structured data cannot proceed until Plaintiffs' experts have been able to review the entirety of the relevant source code.

### C. Third-Party Discovery

On April 15, 2025, Capital One sent Rule 45 subpoenas to three affiliate networks—Rakuten, Commission Junction, and Impact. On April 28, 2025, Plaintiffs identified a list of approximately 30 additional affiliate networks that they have partnered with, and Capital One sent subpoenas to the three affiliate networks that it has also partnered with—Awin, eBay, and Partnerize.

For the reasons described in Plaintiffs' Memorandum in Support of their Motion to Modify, ECF No. 234 at 7–9, namely that Defendants represented to Plaintiffs and to the Court that they would be serving third party subpoenas on all of the identified affiliate networks, on June 17 and 18, 2025, Plaintiffs served 23 third-party document and deposition subpoenas on additional entities, including affiliate networks, that Plaintiffs believe have the information required for Plaintiffs to successfully analyze the structured data. Plaintiffs provided notice of these subpoenas to Capital One on June 18. Plaintiffs are actively engaged in meeting and conferring with these entities to assess what information they have and to obtain the crucial information as quickly as possible. In an abundance of caution and to ensure expedient production of the necessary

documents, Plaintiffs sent subpoenas to several entities that Capital One had already subpoenaed on June 24th and 25th, in order to ensure production of the necessary data and documents as rapidly as possible.

On June 13, 2025, Defendants produced responses to their third-party subpoena from an affiliate network, Impact, and on June 25 and 26, 2025, Defendants produced additional responses to their third-party subpoenas to affiliate networks, Impact, eBay, Rakuten, and Partnerize. Plaintiffs have raised issues with Defendants about the production format of these documents that do not comply with the ESI protocol entered in this case.

**D. Depositions**

Several key depositions have yet to be taken and will be necessary for Plaintiffs before class certification briefing begins. As referenced above, Plaintiffs will need to finish the remainder of the 30(b)(6) depositions, from two designated corporate representatives, including on Topics related to structured data and source code, which the Parties can only schedule after Defendants have provided all the necessary information related to the structured data and after Plaintiffs complete their review of the relevant parts of the source code, which Capital One has thus far barred Plaintiffs from accessing. Plaintiffs also need to take the depositions of the other four custodians identified by Defendants; Defendants provided proposed dates for those custodians on June 26 after Plaintiffs inquired several times, and Plaintiffs are assessing which dates will work. Defendants also provided proposed dates (between July 9–25) for Plaintiffs' depositions on June 26, and Plaintiffs are conferring with their clients regarding scheduling now.

**Defendants' Position**

Capital One has worked expeditiously to provide discovery to Plaintiffs in a manner that allows the parties to meet the Court's schedule. As will be explained more fully in Capital One's

7

forthcoming opposition to Plaintiffs' motion to modify the schedule, Plaintiffs have not diligently pursued the discovery they now claim to need before filing their class certification motion, and have caused a series of unnecessary delays, imposed inappropriate burdens on Capital One and third parties, and wasted resources. Plaintiffs' statement proves the point. Instead of simply taking a deposition of Capital One's structured data witness in order to better understand the data and how it relates to the case, Plaintiffs instead pulled that deposition down and have repeatedly insisted that Capital One's *lawyers* make themselves available to answer a seemingly endless stream of informal questions regarding the data via a series of e-mails and phone calls—a process that has no basis in the Federal Rules or any other discovery mechanism. Capital One has produced the discovery that Plaintiffs are entitled to and has worked with Plaintiffs in good faith to correct their numerous misunderstandings of the discovery and how the affiliate marketing industry actually works. But if Plaintiffs have issues with that process and want to better understand the data, they should depose Capital One's witness, who Capital One offered to make available the week of June 23. Plaintiffs refused, and now, remarkably, claim that it would be "malpractice" to ask a corporate representative witness questions designed to understand produced documents. To be clear, that is not "malpractice." That is how discovery works, and Plaintiffs cite absolutely no case law to support the proposition that they are entitled to special treatment here.

### A. Documents

As Plaintiffs note, Capital One substantially completed its document production on June 18.

Plaintiffs are moving more slowly.[2]  Capital One has asked Plaintiffs three times, the first on June 16, for an update on when they expect to substantially complete their document productions.  Plaintiffs have not responded to any of those inquiries, and state for the first time above that they will not be substantially complete for another two weeks.  It is difficult to fathom why it has taken so long for Plaintiffs to meet their discovery obligations, particularly since they relied almost entirely on search terms crafted by Defendants and provided to them nearly two months ago.  Defendants continue to have concerns about the pace of Plaintiffs' document production, which could necessarily slow the scheduling of Rule 30(b)(6) depositions of each Plaintiff and potentially delay proceedings even further.

### B.      Structured Data

Capital One completed its structured data production on June 3.  Through no fault of Capital One, Plaintiffs did not gain access and download the data until June 11.  Throughout this process, Capital One has promptly responded to all questions that Plaintiffs have asked regarding the data, and continues to prepare and provide guidance and information in response to Plaintiffs' frequent requests for help with matters ranging from production mechanics to the meaning of self-explanatory data field names.  Plaintiffs have the information they need for any appropriately sophisticated expert to complete an analysis of the structured data.

To the extent Plaintiffs have additional questions related to the structured data, Capital One made its corporate representative available to answer those questions in a deposition scheduled for June 25.  Plaintiffs unilaterally and indefinitely postponed that deposition three days before it was

---

[2] Plaintiffs attribute their passivity and lethargy to the fact that they are "five small businesses without the corporate resources of Defendants," which entirely overlooks that five large, well-funded law firms were selected to serve as lead counsel in this case and have responsibility for the logistics of discovery.

9

to take place, inexplicably putting off the ability to ask questions about the data they claim they do not understand. Nevertheless, Capital One has offered to again make its corporate representative—the co-head of Capital One Shopping, who previously rearranged his schedule to meet the Court's deadline, and has now rearranged his schedule again—available on July 15.

Plaintiffs' explanation above that they cannot take this deposition until Capital One answers via informal discovery each and every question they might have relating to a nearly 55 terabyte production is inconsistent with the Federal Rules of Civil Procedure, wholly impractical and ignores Plaintiffs' own delay.[3] Far from "malpractice," if Plaintiffs have questions about the data, a deposition is the proper way to get those answers. And in any event, there is no basis to credit Plaintiffs' assertion that they cannot acquire a "basic understanding" of data that they have retained at least three different "experts" to analyze.

And though Plaintiffs now suggest, without any explanation, that it is actually *the source code* that explains the *structured data*, Plaintiffs have the information they need to progress this case and complete these depositions. The Court should not permit Plaintiffs' endless, baseless complaints.

### C.  Source Code

Plaintiffs' failure to complete their source code review is a problem entirely of their own making. Plaintiffs took more than a month to narrow their incredibly broad request to review the *entirety* of the Capital One Shopping source code. Once they finally identified the portions of the code they believed to be relevant to the case, Capital One made it available for review in San

---

[3] For example, Plaintiffs fault Capital One for not providing additional column descriptions for columns such as "url" until June 26, ignoring that Plaintiffs did not ask for them until June 20, more than a week after Plaintiffs gained access to the structured data (which took more than a week due to Plaintiffs' own errors). If this information was so "key" and went "to the heart" of this case, one would have expected Plaintiffs to seek that information immediately.

Francisco for the convenience of Plaintiffs' expert, consistent with the Protective Order in this case. After their expert reviewed the current version of the relevant code on June 10, Plaintiffs asked to review historical versions of the same portions. Capital One promptly made that code available as well for review on June 18. Plaintiffs, however, then said that they wanted a *different* expert to conduct the review of the historical code, that the review would need to take place in New York instead of San Francisco, and that the expert was not available for more than a week (i.e., until June 26). *See* ECF No. 234-11 at 3–5. Though Plaintiffs' Rule 30(b)(6) of Capital One's corporate representative on the source code was scheduled weeks ago to take place on June 24, Plaintiffs professed on June 20 they had "no choice but to postpone" that deposition due to their delay in completing the source code review. Capital One has offered to again make its corporate representative available on July 16.

Just hours before this report was due, Plaintiffs raised for the first time purported issues with Capital One's production of files showing changes over the class period to the source code. Capital One clearly explained that it was producing these files when it made them available for review on June 18, noting that "[f]iles showing changes over the class period to the source code files we made available for inspection last week" would be available for review. Plaintiffs never raised any issue with this approach until now, and raised no concerns during the review itself.

Contrary to Plaintiffs' assertions that Capital One's production of files showing these changes somehow impedes Plaintiff's review, these files were provided in an attempt to facilitate and streamline review of the changes made to the source code. Indeed, these files were specifically responsive to Plaintiffs' June 5 request to review "any code changes during the class period" that materially impacted certain identified functionalities. Capital One's production provides exactly

11

that. The "diff" or difference files provided by Capital One identify, by date and by version, what was changed in each source code file.

Further, these files provide all the necessary context to understand exactly what changes were made. To perfect Plaintiffs' analogy of adding an "S" to the end of the word in a source code file, the corresponding "diff" file would show the entirety of the line or block of code where the "S" was added, as well as the entirety of the line or block of code prior to the "S" being added. In fact, these "diff" files were provided specifically because they provide this full context for changes without reproducing the entirety of the otherwise unchanged portions of the files, in an attempt to facilitate and streamline review of the changes. The alternative would be to provide dozens if not hundreds of different versions of the same files, with often only small differences between each version.

Plaintiffs' suggestion that Capital One did not provide a "starting point" is similarly erroneous. Capital One provided full source code files from the operative version of the browser extension at the time the suit was filed. The "diff" files provide the full scope and context of changes to those files dating back to the beginning of the relevant period.

Finally, Plaintiffs have also raised for the first time a vague accusation that Capital One is "weaponizing" the Protective Order the Parties negotiated at length. Capital One does not understand Plaintiffs' complaint, particularly since the Protective Order governs *how* source code is reviewed, not *what* source code may be reviewed. This appears to be another pretextual complaint designed to explain away Plaintiffs' failure to make progress and get more time, and not an actual, legitimate issue.

### D. Third-Party Discovery

Recognizing that certain third-party discovery would be necessary in this case, but also that the Parties are required to minimize burdens on third parties, Capital One served third-party

discovery requests on a limited subset of affiliate networks that had relationships with both Capital One and Plaintiffs in April. Plaintiffs sat by impassively for months, and then served more than two dozen eleventh-hour subpoenas in the last ten days, the majority of which are directed to entities with no connection to Capital One. Plaintiffs offer no explanation for their delay, other than a mistaken and unfounded belief that Capital One would pursue discovery from any third party Plaintiffs had a connection with on Plaintiffs' behalf. That delay certainly is not a proper basis to give them more time and exponentially increase the burdens on third parties at this stage in this case. In deciding when the class certification motion should be due, this Court should take into account the burdens associated with collecting discovery from third parties, the vast majority of whom only have relevant information if a class is certified.

Just hours before this report was due, Plaintiffs raised, for the first time, complaints about the format of third-party productions, which Capital One has reproduced to Plaintiffs. Plaintiffs received the first reproduction of third-party documents from Capital One on June 13, and yet Plaintiffs did not mention any issue until today, two weeks later. Among other things, Capital One has reproduced those documents exactly how they received them from third parties, The ESI Protocol requires nothing more.

E.  **Depositions**

Capital One provided dates for four Rule 30(b)(6) depositions of its corporate representatives during the week of June 24. Two proceeded as scheduled on June 26 & 27. Plaintiffs claim above that they need to complete the other two in order to move for class certification. But Plaintiffs unilaterally postponed those "key" source code and structured data depositions mere days before they were set to take place, and used their own delay in pursuing discovery to justify their decision. Plaintiffs already have all the information relating to structured data and the source code that they need to complete those depositions. And while Plaintiffs did

13

not ask, Capital One has provided *new* dates for those depositions during the week of July 14. Capital One has also provided Plaintiffs with deposition availability for the four remaining fact witnesses whose depositions Plaintiffs have requested to take, ensuring that all depositions Plaintiffs have requested will be complete by July 18.

Capital One will also need to depose all five Plaintiffs in this case. Capital One has already sought availability from Plaintiffs as to those depositions, but as noted above, the timing of those depositions has been hampered by Plaintiffs' pace of document production, and Plaintiffs have not identified dates when they will be available for deposition.

Dated: June 27, 2025                                Respectfully submitted,


/s/ *Steven T. Webster*
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**
2300 Wilson Blvd., Suite 728
Alexandria, Virginia 22201
Telephone: (888) 987-9991
swebster@websterbook.com

*Plaintiffs' Local Counsel*

/s/ *E. Michelle Drake*
E. Michelle Drake (admitted *pro hac vice*)
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: 612.594.5999
Fax: 612.584.4470
emdrake@bm.net

/s/ *Norman E. Siegel*
Norman E. Siegel (admitted *pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200

Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

/s/ *Douglas J. McNamara*
Douglas J. McNamara (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, 8th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
dmcnamara@cohenmilstein.com

/s/ *James J. Pizzirusso*
James J. Pizzirusso (admitted *pro hac vice*)
**HAUSFELD LLP**
1200 17th Street N.W. Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
jpizzirusso@hausfeld.com

*Plaintiffs' Co-Lead Counsel*


*/s/ Connor Kelley*
Connor Kelley (VA Bar No. 93596)
Valerie Hletko*
Andrew Soukup*
Stephen Petkis*
Jeffrey Huberman*
Amee Frodle*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 778-5606
Email:  ckelley@cov.com
           vhletko@cov.com
           asoukup@cov.com
           spetkis@cov.com
           jhuberman@cov.com
           afrodle@cov.com

*Attorneys for Defendants Capital One Financial Corp., Wikibuy LLC, and Wikibuy Holdings LLC*

15

**Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on June 27, 2025, I will file this document with the Court's CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
Webster Book LLP
