UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| *In re Capital One Financial Corporation, Affiliate Marketing Litigation* | Case No. 1:25-cv-00023-AJT-WBP |

**CAPITAL ONE'S MEMORANDUM IN SUPPORT
OF EMERGENCY MOTION FOR PROTECTIVE ORDER**

# INTRODUCTION

This motion seeks an order that either (i) directs Plaintiffs to depose Capital One's corporate representative on source code issues on July 18 (a week from today), before he begins parental leave or (ii) relieves Capital One of the obligation to make a corporate representative on source code issues available before Plaintiffs file their class certification motion.

Plaintiffs have long had access to the source code governing Capital One's browser extension. Much of the source code is publicly available, and Plaintiffs have been reviewing it for months. Indeed, Plaintiffs went so far as to present an "expert" at the May tech tutorial—Zubair Shafiq—who claimed (wrongly, as it so happens) to understand how the extension works. Capital One then produced all relevant portions of the source code, including non-public content, in early June. Plaintiffs have extensively reviewed the source code since then, including by enlisting the help of a new expert to correct Prof. Shafiq's mistakes, conducting four review sessions at Covington's offices, and taking home several printouts to review further. If there were any merit to Plaintiffs' allegation that the Capital One Shopping extension is systematically and uniformly "stealing" affiliate commissions or engaging in cookie-stuffing, Plaintiffs would have found it in the source code immediately, and certainly by now. They clearly have not.

Instead, Plaintiffs have pivoted to a strategy of delay and distraction—focusing on raising an endless string of baseless deficiencies and informal questions that they expect Capital One's lawyers to answer immediately via e-mail or on phone calls. Even though Plaintiffs' concerns lack merit, Capital One has worked hard to address them, including by (i) repeatedly providing access to even more code that Plaintiffs do not need (and that sheds no light on whether affiliate commissions are being "stolen") and (ii) answering remedial questions about structured data that their "experts" apparently could not. None of that has been sufficient to satisfy the Plaintiffs,

because none of it changes the fact that the source code fundamentally contradicts Plaintiffs' case theory.

Capital One has repeatedly offered to make its corporate representative available to answer questions about the source code via deposition. Adam Zacharski is the Chief Technical Officer of Capital One Shopping and the most knowledgeable person about the extension source code, having personally written large portions of it himself. Although Plaintiffs voluntarily agreed to take Mr. Zacharski's deposition on two different occasions, June 24 and July 16, they unilaterally canceled *both* shortly beforehand, citing purported deficiencies that did not bother them when previously agreeing to those dates. In the process, Plaintiffs forced Capital One to incur substantial preparation costs, time, and interruption to the business for no good reason with ever-shifting depositions dates.

Court intervention is now necessary. Mr. Zacharski's wife is scheduled to give birth the week of July 21, after which he will not be available for deposition until early September, after the class certification deadline. Plaintiffs have long been on notice of this constraint on Mr. Zacharski's time, including when it was raised at the July 1 status hearing in this case. *See* Ex. A, at 51:21–52:5. Weeks later, Plaintiffs are refusing to take his deposition at his last available opportunity on July 18, claiming that they still cannot take an "intelligent" deposition because, notwithstanding their prior representations to the Court, they still do not understand how the extension works. But if Plaintiffs do not understand the source code, their recourse is to depose Mr. Zacharski. And if, after that deposition, they have concerns with Mr. Zacharski's testimony or the completeness of Capital One's source code production, they can raise those issues with the Court and seek appropriate relief—including, if appropriate, a further deposition. But Plaintiffs should *not* be permitted to continue moving the goalposts and indefinitely delay a Rule 30(b)(6)

deposition they requested months ago and that Capital One is prepared to provide until every minute and baseless concern is addressed, particularly since doing so would either jeopardize the case schedule or force Capital One to incur the duplicative expense of preparing an entirely new witness who is less knowledgeable than Mr. Zacharski.

Accordingly, Capital One seeks a protective order establishing that Mr. Zacharski be deposed on July 18, at his last available opportunity consistent with the case schedule. If Plaintiffs choose not to depose Mr. Zacharski on this date, then this Court should make clear that Plaintiffs must file their class certification motion without the benefit of corporate representative testimony about Capital One's source code. For these and the reasons that follow, this emergency motion should be granted.[1]

## BACKGROUND

Capital One produced the relevant source code on June 10, and Plaintiffs conducted full-day review sessions on four different occasions with the assistance of multiple experts: June 10, June 26, July 7, and July 10. *See* Declaration of Derek Andros ("Andros Decl.") ¶¶ 3, 7, 11–12. Following some of those sessions, Plaintiffs requested access to additional code or to view the code in a different way. Even though most of those requests sought completely irrelevant or duplicative information, Capital One worked with Plaintiffs in good faith to move the case forward in line with the Court's wishes and supplemented its source code production on a number of occasions, including June 18, July 7, and July 10. *Id.* ¶¶ 5, 10, 12.

---

[1] Pursuant to Local Rule 37(E), Capital One sent multiple emails to Plaintiffs indicating that Mr. Zacharski was unable to be deposed after July 18, and told Plaintiffs they would seek relief if they refused to proceed with his deposition on that date. Plaintiffs refused, and only confirmed on July 10 they did not intend to depose Mr. Zacharski. Given the short duration between the date of filing and July 18, Capital One was forced to seek emergency relief the following day.

3

Capital One first offered to make Mr. Zacharski available for deposition on June 24, two weeks after Plaintiffs first reviewed the produced source code and long after they had reviewed the publicly-available source code. Plaintiffs accepted that date and Capital One began preparing Mr. Zacharski accordingly, incurring substantial expenses and interruptions to the business in doing so. But on June 20, just two business days prior to the agreed date, Plaintiffs unilaterally cancelled the deposition.

Since that time, Plaintiffs have sent an endless series of letters and informal discovery requests regarding the source code. Some of these requests have been inconsistent. For example, after Plaintiffs requested to see changes to the source code over time, Capital One provided "diff" files, an industry standard way of showing changes between different versions of code. Plaintiffs then complained that the "diff" files failed to show what was *not changed*, and asked for full access to every prior version of the code, even though that would give them zero new information and make the entire process less efficient. Even though the request was nonsensical, Capital One complied, providing access to earlier versions of the source code on June 26. Andros Decl. ¶ 7.

After devoting dozens of hours to addressing Plaintiffs' purported deficiencies and informal questions—including basic questions like "what do the data fields mean," which Mr. Zacharski easily could have answered—Capital One offered to reschedule the deposition for July 16. Plaintiffs agreed. Then on July 7, Plaintiffs again unilaterally canceled Mr. Zacharski's deposition, stating that they would take it on July 22 instead. Capital One reminded Plaintiffs that Mr. Zacharski was not available after July 21, but offered to make him available as a last resort on July 18, just three business days before his wife was scheduled to give birth via C-section.

Plaintiffs refused this offer and raised a litany of new "deficiencies" for the first time on July 10, a month after first gaining access to the source code. Andros Decl. ¶ 13. And even though

4

they had agreed to depose Mr. Zacharski on two prior occasions (and suggested they could accommodate a third date on July 22), Plaintiffs suddenly claimed they could not take the deposition at *any* concrete point in the future, essentially asking to postpone indefinitely. As above, Plaintiffs' complaints were internally inconsistent and reflected a fundamental misunderstanding of the source code that Mr. Zacharski is best suited to correct.[2] Not only were the complaints unreasonable, they should have and could have been raised earlier. *Id.* Ultimately, and as explained more fully below, any newly raised deficiencies are ultimately a sideshow: Plaintiffs have had ample time to prepare for this deposition, and they should be required to take it by July 18.[3]

## PROCEDURAL STANDARD

For "good cause," courts may "issue an order to protect a party or person from . . . annoyance, embarrassment, or undue burden or expense" associated with discovery. Fed. R. Civ. P. 26(c). This extends to an order "specifying terms, including time and place or the allocation of expenses," for discovery. "Good cause to issue a protective order generally exists where the party seeking the protective order demonstrates that specific prejudice or harm will result if no protective order is granted." *United States v. Google, LLC*, 682 F. Supp. 3d 583, 592 (E.D. Va. 2023). In addition, district courts maintain "substantial discretion" in managing discovery," *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002), including as to

---

[2] For example, on June 27, Plaintiffs' counsel complained that Capital One had not provided "comprehensive snapshots of the code at points in time," and requested these snapshots to allow "meaningful review of changes made to Defendant's code over time." But after Capital One provided these snapshots, Plaintiffs complained again, this time because Capital One provided multiple snapshots, and not simply "one holistic snapshot." Andros Decl. ¶ 15.

[3] Mr. Zacharski will not return from leave until September 5 at the earliest, and that assumes that there are no developments that require him to extend his leave further.

issuing protective orders related to depositions, *see Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 542–43 (4th Cir. 2004).

## ARGUMENT

The Court should grant Capital One's motion for a protective order for two primary reasons. *First*, Plaintiffs have received ample opportunity to review the code, enabling them to depose Mr. Zacharski on the dates he has been made available. None of the perceived deficiencies they have raised justify further delay. *Second*, Mr. Zacharski is the right witness and is prepared to testify, and forcing Capital One to prepare a different witness to testify to meet the schedule in this case would cause substantial prejudice.

### I. Plaintiffs Have Had Ample Time to Prepare for Mr. Zacharski's Deposition, and None of their Complaints Justify Further Delay.

Large portions of the browser extension's source code are generally publicly available, so much so that Plaintiffs were able to include portions of it in their complaint and Plaintiffs' "expert" was able to present a tutorial based on that code to the Court on May 9.

Capital One first made non-public portions of its source code available more than a month ago, and has to date produced the source code files that Plaintiffs have requested. This includes the relevant files for the functionalities of the browser extension that are central to this case. Plaintiffs, along with their multiple experts, have now reviewed that code in four in-person sessions, and have spent countless additional hours reviewing printouts of the code. *See generally* Andros Decl. It is unclear why multiple experts are needed to review the source code: the "expert" who presented for Plaintiffs during the tech tutorial—Professor Shafiq—claimed in a declaration supporting Plaintiffs' request to modify the case schedule he had been "retained to analyze the source code that controls the Capital One browser extension," *see* ECF 237 ¶ 13, yet he has not visited Covington's offices to review the source code since June 10.

6

Plaintiffs also have engaged in a months' long campaign of informal discovery, forcing Capital One's *counsel* to answer various questions as to the meaning of the source code, perhaps in part because their own experts cannot answer those same questions. *See, e.g.*, Andros Decl. ¶¶ 7–15. Despite the inappropriateness of this campaign, Capital One has consistently engaged with Plaintiffs in good faith, answering their questions where it can, and conferring with Plaintiffs' counsel about the source code on multiple occasions.

Finally, Plaintiffs have asked to take the deposition of Capital One's corporate representative on the "revision history of the Capital One Shopping Browser Extension Source Code," amongst other source-code related topics. Capital One has repeatedly agreed to make this witness, Mr. Zacharski, available: first on June 24, then on July 16, and now on July 18.

Plaintiffs initially agreed to the first two deposition dates before belatedly and unilaterally cancelling the depositions, likely owing to their view that they cannot take a deposition until every possible question they can conceive of is answered by Capital One's *lawyers*. This is despite the fact that Capital One has now three times made *the person most knowledgeable* about this topic available to be deposed, where he would be under oath and compelled by law to answer their questions. And this extends to questions that Plaintiffs unquestionably could have raised a month ago, but did not.[4] The purpose of a deposition is to "discover information." *Glass v. Metro. Wash. Airport Auth.*, 2024 WL 1558712, at *1 (E.D. Va. Apr. 10, 2024). Capital One has taken all reasonable steps to make sure Plaintiffs can "discover information" by deposing Mr. Zacharski, but Plaintiffs apparently would prefer to have all of their answers in advance.

---

[4] For example, in a July 10 email following a review of the source code, Plaintiffs raised for the first time a purported concern with certain server-side source code that had been available for review since June 18. Andros Decl. ¶ 14.

There is simply no authority whatsoever for Plaintiffs' view that they can unilaterally put off a deposition they noticed and agreed to indefinitely until they feel like they have every question already answered and are "ready" to proceed. Nor is there authority allowing Plaintiffs to continually rely on purportedly "missing" portions of source code as justification for their delay, no matter how tangentially relevant (or entirely irrelevant) those portions are to this case, or whether Plaintiffs knew about those "issues" long ago but chose not to raise them until now. Mr. Zacharski is prepared, and he is Capital One's chosen designee. Plaintiffs should take this deposition now, without prejudicing their ability to seek additional discovery within the fact discovery period and after Mr. Zacharski returns.

## II.   Further Delay Would Substantially Prejudice Capital One.

Perhaps these tactics could be tolerated if Mr. Zacharski was indefinitely available, and Capital One has just about tolerated it for other witnesses despite the personal and business burden such tactics impose on its employees.[5] But Mr. Zacharski is in a different position.

Mr. Zacharski is the Chief Technology Officer of Capital One Shopping. *See* Declaration of Adam Zacharski ("Zacharski Decl.") ¶ 1. He has been with the company since its existence, and was one of the early employees of Wikibuy, the company that ultimately became Capital One Shopping. *Id.* ¶ 2. He has intimate knowledge of the source code that has been produced in this case, how it has changed over time, as well as how that code impacts the operation of the Capital One Shopping browser extension. *Id.* ¶ 3. In short, he is the most knowledgeable person at Capital

---

[5] Indeed, as with Mr. Zacharski, Plaintiffs have now twice unilaterally postponed the deposition of Adam Gauvin, another of Capital One's corporate designees. Capital One subsequently offered dates at the end of July for his rescheduled deposition, but Plaintiffs have thus far refused to accept those. Despite this, Capital One is committed to providing even more dates for Mr. Gauvin's deposition.

8

One Shopping on the topic that he been noticed, which is why Capital One has designated him to be its corporate representative of the company in response to Topic 4 and 21.[6]

If Plaintiffs do not depose Mr. Zacharski by July 18, he will not be available before Plaintiffs' class certification motion is due September 1. Mr. Zacharski's wife is scheduled to give birth on July 23. *Id.* ¶ 6. Mr. Zacharski does not anticipate returning from his leave and being available for a deposition until September 5, assuming there are no circumstances that require him to extend his leave. *Id.*

Forcing Capital One to prepare *another* witness to meet the existing case schedule would impose undue burden on Capital One, and imposes prejudice on Capital One in two ways. First, Capital One—not Plaintiffs—gets to decide who will be its corporate representatives. Rule 30(b)(6) leaves the "identity of the designees *completely within the testifying organization's discretion*." *Infernal Tech., LLC v. Epic Games, Inc.*, 339 F.R.D. 226, 230 (E.D.N.C. 2021) (emphasis added). Plaintiffs cannot "dictate under Rule 30(b)(6) which individuals" Capital One should make available, which they are effectively doing by refusing to depose Mr. Zacharski before his parental leave begins. *McPherson v. Wells Fargo Bank, N.A.*, 292 F.R.D. 695, 698 (S.D. Fla. 2013).

Second, the extensive time Capital One has spent preparing Mr. Zacharski for his deposition would be wasted. Mr. Zacharski and Capital One's lawyers have invested substantial time and effort to meet their discovery obligations prepared, time and effort that could have otherwise been spent on his job supporting Capital One Shopping. Zacharski Decl. ¶ 5. Having to re-do this with a different witness would impose prejudice. *See, e.g.*, *Infernal Tech.*, 339 F.R.D. at 230; *Miller v. Garvin*, 2016 WL 889664, at *3 (D.S.C. Jan. 27, 2016) (expending "significant

---

[6] The parties have agreed to limit the scope of Topic 21 to "Capital One's tech-ticketing system."

9

time, money, and resources in preparing for" deposition that does not occur constitutes prejudice); *accord United States v. Namkoong*, 616 F. Supp. 579, 580–81 (E.D. Va. 1985) (time and expense required to reprepare for trial constitutes prejudice).

Meanwhile, there is *zero* prejudice to Plaintiffs in proceeding with Mr. Zacharski's deposition on July 18. Plaintiffs originally agreed to depose him on June 24. They then received nearly a month in additional time to prepare and further access to Capital One's source code, and will get via this deposition access to Capital One's most knowledgeable witness on source code issues where they ask whatever questions they seek to ask. That is a far more efficient, and more effective, way to get answers than Plaintiffs' consistent stream of letters and emails to Capital One's counsel. To the extent Plaintiffs feel after that deposition that he was not adequately prepared, they can raise that issue then and seek appropriate relief. The equities favor having Plaintiffs proceed with Mr. Zacharki's deposition on July 18 or, if they choose not to, relieving Capital One of any obligation to prepare and produce another witness while Mr. Zacharski is unavailable.

## CONCLUSION

This Court should grant this Emergency Motion and either order Plaintiffs to depose Mr. Zacharski on July 18 or make clear that Plaintiffs must file their class certification papers without the benefit of receiving testimony from Capital One relating to Topics 4 and 21.

DATED: July 11, 2025                                              Respectfully submitted,

By: */s/ Connor Kelley*

          Connor Kelley (VA Bar No. 93596)
          Valerie Hletko*
          Andrew Soukup*
          Stephen Petkis*
          Jeffrey Huberman*
          Amee Frodle*
          COVINGTON & BURLING LLP
          One CityCenter
          850 Tenth Street, NW
          Washington, DC 20001-4956
          Telephone: (202) 662-6000
          Facsimile: (202) 778-5606
          Email: ckelley@cov.com
             vhletko@cov.com
             asoukup@cov.com
             spetkis@cov.com
             jhuberman@cov.com
             afrodle@cov.com

          *Attorneys for Capital One*

          **Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.

By: /s/ *Connor Kelley*
Connor Kelley