# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| *In re: Capital One Financial Corporation, Affiliate Marketing Litigation*<br><br><br>This Document Relates To: *All Cases* | Case No.: 1:25-cv-00023-AJT-WBP |

## SUPPLEMENTAL STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND CLASS <u>REPRESENTATIVE SERVICE AWARDS</u>

## **INTRODUCTION**

On June 16, 2026, the Court granted final approval to settle this matter but asked Plaintiffs for supplemental briefing regarding their application for attorneys' fees and costs. ECF No. 366. The Court subsequently ordered Plaintiffs to submit the amount of Notice and Settlement Administration Costs pursuant to Section 2.4 of the Settlement Agreement and a "supplemental affidavit detailing (1) the size of the class; (2) the number of claim forms filed under each category of relief; (3) the total number and amount of the claims approved for payout; (4) the total number and amount of claims denied for payout; and (5) the total number and amount of outstanding claims." ECF No. 367. Plaintiffs submit this supplement to answer the Court's questions, provide further detail on class participation in the settlement, and briefly restate the reasons why the Court should award the fees and expenses Plaintiffs sought and to which Capital One agreed to fund separately as part of the resolution of this novel litigation.

### A.    Amount of Notice and Settlement Costs

The Settlement Administrator reports that it has incurred $ 192,636.66 to date in notice and settlement administration costs, but it previously agreed to cap any Notice and Settlement Administration Costs it sought to recover in connection with this Settlement at $209,687. Stephen Donaldson Decl. ("Donaldson Decl.") ¶¶ 6–7.

### B.    Class Participation and Claims Details

The notice program here was robust. The claims website recorded nearly 93,673 visitor sessions and 175,782 page views. ECF No. 360-1 (Azari Decl.), ¶ 23. These numbers grew slightly since the date of the declaration. Plaintiffs' Counsel can report that a June 29, 2026 activity report slightly increased these numbers to 94,992 sessions and 177,633 page views. Donaldson Decl. ¶ 8. As noted, the notice is estimated to have reached 75% of the settlement class. Azari Decl. ¶ 36. The full size of the settlement class, however, is unknown. ECF No. 353 at 16 and n.6 ("The

precise potential Settlement Class size is indeterminate but numbers in the thousands[.] . . The Capital One Structured Data contains affiliate links, which include unique identifiers assigned to class members, such as Publisher IDs and Affiliate IDs. However, many class members are associated with multiple unique identifiers (because, for example, they work with multiple affiliate networks, each of which assigns its own IDs, or operate multiple brands or online properties, each of which may also have its own IDs).").

There were 810 timely claims submitted by the April 17, 2026 deadline. Azari Decl. ¶ 29. Of the 810 timely submitted claims, 257 sought Proof Payments and 552 sought Alternative Payments. Donaldson Decl. ¶ 10. To verify that a given claimant was a class member, each claimant was required to provide three primary pieces of information: (i) a legitimate publisher ID, affiliate ID, affiliate link, trade name, or click ID that could be used to locate the claimant in Capital One's data; (ii) evidence that the submitted identifiers belong to the claimant (since these identifiers can easily be extracted from any URL on the internet); and (iii) evidence that the claimant operates in the same merchant-network ecosystem where Capital One Shopping also operates. ECF No. 353-1 ("Settlement Agreement" or "S.A.") at § 1.46. These requirements ensured that only "real" publishers participated in the Settlement and also protected against the very real prospect of fraud, i.e. profit-seeking claimants submitting claims based on information obtained via scraping the internet for affiliate IDs or other identifiers and submitting claims en masse.

Per the Settlement Agreement, each deficient filer received an individualized notification (rather than boilerplate) which identified the specific deficiency, described how to cure it, and gave fourteen days to respond. Claims were deficient for a variety of reasons, including because the filers failed to include the information needed to determine whether their information was present

in Capital One's data, such as affiliate or publisher IDs, or because the filers failed to identify a merchant with whom both they and Capital One did business. At least some filers appeared to be consumers who used the Capital One Shopping app and not content creators who were eligible to participate in the class settlement. Plaintiffs took every reasonable step to ensure no claim would be denied for a fixable form error.

A total of 18 claims were identified for payment after Plaintiffs' experts searched the data for the identifiers submitted by filers. Azari Decl. ¶ 34. This included three "Proof Payment Claims" based on the actual commission received by Capital One Shopping, with a combined proposed payout of $3,056.96. *Id.*; Donaldson Decl. ¶ 10. The remaining 15 "Alternative Payment Claims" were eligible for fixed-amount payments of $20 each. Azari Decl. ¶ 34. While they demonstrated affiliate-publisher status and ecosystem overlap with Capital One Shopping, the data they submitted did not correspond to a specific transaction in Capital One's data. The remaining 792 claims were denied for payout: assuming each denied claim sought a $20 Alternative Payment Claim, the total of the denied claims is $15,840. With respect to the Court's request for information regarding outstanding claims, the claim review process is complete, and Capital One will issue payment to the Settlement Administrator for distribution to the 18 approved claimants consistent with the process set forth in Section 4.8.1 of the Settlement Agreement. S.A. at § 4.8.1. One claim was submitted after the April 17 deadline and was deemed deficient on its face and for failure to submit by the deadline.

To verify that a given claimant was a class member, each claimant was required to provide the pieces of information described above: (i) a legitimate publisher ID, affiliate ID, affiliate link, trade name, or click ID that could be used to locate the claimant in Capital One's data; (ii) evidence that the submitted identifiers belong to the claimant (since these identifiers can easily be extracted

from any URL on the internet); and (iii) evidence that the claimant operates in the same merchant-network ecosystem where Capital One Shopping also operates. S.A. at § 1.46.

One possible explanation for the number of validated claims is that any commissions lost would generally be small on an individual-by-individual basis. Thus, spending the time to go through the necessary steps of claimant verification to recover a few dollars may not have made financial sense for many claimants. Moreover, claimants knew that Capital One agreed to business practice commitments. This is not because the settlement was not fair, adequate and reasonable (indeed, it provided an opportunity for verified claimants to obtain one hundred cents on the dollar for any documented commission losses should they choose to submit them) but because the dollars at stake are low to begin with.

Pursuant to the Settlement Agreement, Capital One agreed to implement or maintain certain business practice commitments as to the Capital One Shopping Browser Extension. S.A. at § 3.5. The commitments in the Settlement include continued stand-down-rule compliance (§ 3.5.1.1); global remediation authority to ensure that fixes are not limited to a single merchant (§ 3.5.1.5); internal compliance monitoring to formalize a process for periodically reviewing stand-down rules and monitoring compliance (§ 3.5.1.2); identifying an industry ombudsman with published email address for merchants, affiliate networks, and publishers to raise concerns (§ 3.5.1.3); bona fide complaint review (§ 3.5.1.4); and court enforcement (§ 3.5.3).

## C.    Plaintiffs' Fee Request

Because this is a claims-made settlement primarily focused on structural relief, Plaintiffs' Counsel's fees, costs, and any class representative service awards are not paid out of any funds to the Class but have been agreed to be paid by Capital One separately. S.A. at § 3.4.1. Only after an agreement was reached on the settlement terms, as negotiated with the assistance of a private

mediator (former federal judge Jay C. Gandhi), did Capital One agree to pay Plaintiffs' Counsel up to $3,950,000 to cover expenses and about one-third of their attorneys' fees. Pls.' MOL in Support for Attorneys' Fees and Class Representative Service Awards, ECF No. 357 at 7. Plaintiffs' Counsel's out of pocket expenses alone were over $673,000. *Id*. at 3. The net fee is thus $3,276,707.18. *Id*. The cumulative lodestar of just lead counsel exceeded $9,200,000, based on over 12,500 hours of work. *Id*. at 13. Those hours stemmed from the following: developing this novel case, drafting several iterations of the complaint; successfully opposing the motion to dismiss; working with experts to review source code; taking and defending over a dozen depositions; drafting and opposing numerous motions to compel; and briefing class certification. *Id*. at 13–14. Importantly, if the attorneys' fees are not awarded in full, the remainder of that money does not flow to the class.

Numerous Courts have found that awarding fees less than total lodestar is presumptively reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). And the significant negative multiplier here—0.35—is well below the positive ones approved by this Court. *See, e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers."). Further, the rates charged by Lead Counsel are reasonable and have been approved by this Court or others in this District. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, Case No. 1:19-MD-2915-AJT-JFA, 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.*, Case Nos. MDL No. 1:15-md-2627 (AJT/TRJ); MDL No. 1:16-md-2743 (AJT/TRJ), 2020 WL 5757504, at *6, *9 (E.D. Va. Sept. 4, 2020) (finding rates reasonable and awarding fees with a negative multiplier of .82).

In short, the Settlement provides valuable injunctive relief which will ensure proper commissions payments for years to come, which also supports the fee request here. *Halcom v. Genworth Life Ins. Co.*, No. 3:21-CV-19, 2022 WL 2317435, at *11, *12 (E.D. Va. June 28, 2022) (awarding fee request based on value of damage payments and injunctive relief obtained compared to amount defendant agreed to separately provide). While ultimately modest, the Settlement also provided verified claimants full redress if they could submit commissions data which matched Capital One's records and showed commissions received by Capital One, or alternative payments if they just appeared in Capital One's data at all. The Settlement was therefore a good result in the face of a big risk—a novel case with unknown class members who had small damages—and exactly the kind of case suited for a class action. Society is best served to encourage competent pioneering counsel to take on such risks, particularly where the agreed structural reforms address the conduct at issue in the case. *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009).

## CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court: (1) award Class Counsel $3,950,000 in combined attorneys' fees and reasonable expenses; and (2) award each of the five Settlement Class Representatives a service award of $10,000.

Dated: July 2, 2026                    Respectfully submitted,

                                       /s/ Steven T. Webster
                                       Steven T. Webster (VSB No. 31975)
                                       **WEBSTER BOOK LLP**
                                       2300 Wilson Blvd., Suite 728
                                       Arlington, Virginia 22201
                                       T: (888) 987-9991
                                       E: swebster@websterbook.com

*Plaintiffs' Local Counsel*

Norman E. Siegel (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
T: (816) 714-7100
E: siegel@stuevesiegel.com

E. Michelle Drake (*pro hac vice*)
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T: (612) 594.5999
F: (612) 584.4470
E: emdrake@bm.net

Douglas J. McNamara (*pro hac vice*)
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Ave. NW, 8th Floor
Washington, DC 20005
T: (202) 408-4600
F: (202) 408-4699
E: dmcnamara@cohenmilstein.com

James J. Pizzirusso (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street N.W., Suite 600
Washington, DC 20036
T: (202) 540-7200
E: jpizzirusso@hausfeld.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Steven T. Webster*
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**